UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TODD BRAND, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br>　　v.<br><br>ADT, LLC, SAFE STREETS USA, LLC, and RESOURCE MARKETING CORP., LLC<br><br>　　　　　　　　　Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Todd Brand ("Plaintiff" or "Mr. Brand"), individually and on behalf of all others similarly situated, alleges the following on information and belief against ADT, LLC ("ADT"), Safe Streets USA, LLC ("Safe Streets"), and Resource Marketing Corp., LLC ("Resource Marketing") (collectively "Defendants") regarding Defendants' violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"). Plaintiff brings this Complaint to: (1) stop Defendants' practice of sending text messages using an "automatic 'telephone dialing system" (ATDS) to the cellular telephones of consumers nationwide without their prior express written consent; (2) enjoin Defendants from continuing to send autodialed text messages to consumers who did not provide their prior express written consent to receive them; and (3) obtain redress for all persons injured by its conduct.

**JURISDICTION AND VENUE**

1.　This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as

here: (a) there are 100 or more members in the proposed class; (b) some members of the proposed Class have a different citizenship from Defendants; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate. *See* 28 U.S.C. § 1332(d)(2) and (6).

2. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves violations of a federal statute, the TCPA.

3. This Court has personal jurisdiction over Defendants because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff resides in this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## PARTIES

5. Plaintiff Todd Brand is, and at all times mentioned herein was, a resident of Buffalo Grove, Illinois, and a citizen of the State of Illinois.

6. Defendant ADT, LLC is a Delaware corporation with its principal place of business located at 1501 Yamato Road, Boca Raton, Florida 33431. ADT conducts business in this District and throughout the United States. During all times relevant to Plaintiff's claims, ADT directed and authorized all of the unlawful text messages described herein, and was intimately involved in the program to send these texts, including the selection of the calling equipment. Defendant ADT was the guiding spirit and central figure behind these unlawful messages being sent in the matter they were. The unlawful messages were sent for ADT's benefit and for the express purpose of promoting ADT's services.

7. Defendant Safe Streets USA, LLC is a Delaware limited liability company with its principal place of business located at 5305 Raynor Road, Suite 100, Garner, NC 27529. Safe Streets conducts business in this District and throughout the United States. Defendant Safe Streets is an authorized dealer and retailer of ADT home security systems. Defendant Safe Streets contracts Defendant Resource Marketing Corp., LLC to send text messages on its behalf. During all times relevant to Plaintiff's claims, Safe Streets directed and authorized all of the unlawful text messages described herein and was intimately involved in the program to send these texts, including the selection of the calling equipment. Defendant Safe Streets was the guiding spirit and central figure behind these unlawful messages being sent in the matter they were.

8. Defendant Resource Marketing Corp., LLC is a Delaware limited liability company with its principal place of business located at 800 Route 146, Suite 175, Clifton Park, NY 12065. Resource Marketing conducts business in this District and throughout the United States. Defendant Resource Marketing is a provider of telemarketing services. Defendant Safe Streets contracts Resource Marketing to send text messages on its behalf.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A. The TCPA Of 1991

9. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

10. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers," defined as equipment which "has the capacity . . . (a) to store or produce telephone numbers to be called, using a random or sequential number generator; and (b) to dial such numbers." 47 U.S.C. § 227(a)(1). Specifically, the plain language of section

227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. The same section forbids making calls using an "artificial or prerecorded voice." *Id.*

11. The FCC has issued rulings clarifying that in order to obtain an individual's consent, a clear, unambiguous, and conspicuous written disclosure must be provided by the individual. 2012 FCC Order, 27 FCC Rcd. at 1839 ("[R]equiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer—providing permission in writing—to authorize autodialed or prerecorded telemarketing calls. . . .").

12. The FCC has also ruled that consumers are entitled to the same protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has subsequently confirmed that the prohibition on using automatic telephone dialing systems to make calls to wireless phone numbers applies to text messages (e.g. phone-to-phone [short message service]), as well as voice calls.") (internal quotations omitted).

**B.     Defendants' Text Messages To Plaintiff And Class Members**

13. Beginning in June of 2018, Defendant Resource Marketing—acting on behalf of and at the direction of Defendants Safe Streets and ADT—sent multiple unsolicited, non-emergency text messages to Plaintiff's cell phone at (847) *** - **** using the telephone number (855) 276-6166,.

14. On June 26, 2018 at 10:09 AM, Plaintiff received an unsolicited text message from the telephone number (855) 276-6166 from an individual identifying himself as "Sam from ADT." The message reads:

4

>  Hey it's Sam from ADT.  We are in your area this week with $100 dollar gift cards and $850 of free equipment.  Can we chat real quick so you don't miss out?

15.     On June 28, 2018, Plaintiff received the following text message from (855) 276-6166:  "Hey, Sam from ADT again. We are right in your area now and going door to door. Do you have a second for me to explain this promotion?"  After receiving this call, Plaintiff called the number back and spoke with a customer service representative who offered to make an appointment with Plaintiff to discuss ADT's services.

16.     On July 17, 2018, Plaintiff received the following text message from (855) 276-6166:  "Hey it's Pat on behalf of ADT Home Security.  We are in your area this week with $100 gift cards and $850 of free equipment.  Let's chat so you don't miss out."

17.     The following is a screenshot showing all three text messages:



5

18. Upon information and belief, the text messages originated from a telephone number owned and operated by Defendant Resource Marketing.

19. Defendant Resource Marketing sent the text messages on behalf of Defendants Safe Streets and ADT using an automatic telephone dialing system ("ATDS") without obtaining Plaintiff's prior express written consent.

20. The text messages were impersonal and generic, a hallmark of an ATDS. According to the Federal Communications Commission and experts on telecommunications equipment, an ATDS has the inherent present capacity to both (1) store and dial a list of telephone numbers without human intervention, and (2) generate random or sequential telephone numbers and to then text those numbers.

21. Prior to the text messages at issue in this action, Mr. Brand had no contact with any of the Defendants and had never inquired into any ADT services. He has never consented in writing, or otherwise, to receive autodialed text messages from Defendants.

22. Online consumer complaints regarding unsolicited phone calls from the (855) 276-6166 are legion:

- "Got a text msg from this number: Hey it's Sam from ADT. We are in your area this week with $100 dollar gift cards and $850 of free equipment. Can we chat real quick so you don't miss out?"[1]
- "I also got a text from this number just today . . . Hey it's Pat from ADT. We are in your area this week with $100 dollar gift cards and $850 of free equipment. Can we chat real quick so you don't miss out?"[2]

23. These consumer complaints suggest Defendants are texting so many people that they are almost certainly using automated technology that would constitute an ATDS.

---

[1] https://800notes.com/Phone.aspx/1-855-276-6166
[2] *Id.*

24. Given the size of Defendants' businesses, the generic nature of the text messages that Plaintiff received, and the number of complaints about Defendants online, there is little doubt that Defendants sent similar or identical text messages to thousands of other consumers as well.

25. Defendants knowingly sent (and continue to send) autodialed text messages to the cellular telephones of Plaintiff and other consumers without the prior express written consent of the text recipients. In so doing, Defendants have caused actual concrete harm to Plaintiff and the Class members, because such individuals have been subjected to invasion of privacy, unwanted/intrusive text messages, have been required to pay cell phone service providers for unwanted text messages, lost use of their cell at the time of receiving the unwanted text message, wasted time on receipt of and reading of the unwanted text messages, and have been subjected to increased electricity charges from receipt of unwanted text messages.

**SAFE STREETS AND ADT'S VICARIOUS LIABILITY FOR THE TEXT MESSAGES**

26. ADT and Safe Streets are each a "person," as defined by 47 U.S.C. § 153(39).

27. The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. § 227(b)(2).

28. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 (1995).

29. In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the TCPA*, CG Docket No. 02-278, FCC 07-232, Declaratory Ruling, ¶ 10 (Jan. 4, 2008) (specifically recognizing "on behalf of" liability in the context of an autodialed or

prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

30. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as ADT and Safe Streets may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network*, 28 FCC Rcd. 6574, 6588 (¶ 37) (2013) ("May 2013 FCC Ruling") (internal citations omitted).

31. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 (¶ 34).

32. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n.107.

33. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter

8

> consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id.* at 6592 (¶ 46)

34. ADT and Safe Streets are legally responsible for ensuring that the company that made the calls complied with the TCPA, even if they did not themselves make the calls.

35. ADT and Safe Streets knowingly and actively accepted business that originated through the illegal telemarketing calls of Defendant Resource Marketing, the company that made the calls.

36. By hiring a company to make calls on its behalf, ADT and Safe Streets "manifest[ed] assent to another person … that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

37. Moreover, ADT and Safe Streets maintained interim control over the actions of the party that made the calls.

38. For example, ADT and Safe Streets had control over whether, and under what circumstances, it would accept a customer.

39. Furthermore, ADT and Safe Streets had day-to-day control over the actions of the calling party, including the ability to prohibit it from using a pre-recorded message to contact potential customers.

40. Additionally, ADT and Safe Streets restricted the geographic location of the calls made by Resource Marketing promoting ADT's services.

41. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this action on behalf of himself and all other persons similarly situated.

43. Plaintiff proposes the following Class definition:

> All persons within the United States who (a) received a text message on his or her cellular telephone; (b) made by or on behalf of Defendants; (c) without giving prior express written consent to Defendants; (d) at any time in the period that begins four years before the filing of the complaint in this action to the date that class notice is disseminated.

44. Plaintiff represents, and is a member of, this proposed Class. Excluded from the Classes are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, any Judge and/or Magistrate Judge to whom this action is assigned, and any member of such Judges' staffs and immediate families.

45. **Numerosity.** Plaintiff does not know the exact number of members in the proposed Class, but reasonably believes, based on the scale of Defendants' business, that the Class is so numerous that individual joinder would be impracticable.

46. **Existence and predominance of common questions of law and fact.** Plaintiff and all members of the proposed Class have been harmed by the acts of Defendants in the form

10

of multiple involuntary telephone and electrical charges, the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing text messages, and violations of their statutory rights.

47. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a plethora of identical suits.

48. The proposed Class can be easily identified through records maintained by Defendants.

49. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions which may affect individual members of the proposed class. Those common question of law and fact include, but are not limited to, the following:

   a. Whether Defendants sent text messages to Plaintiff and class members using an ATDS without their prior express written consent;

   b. Whether Defendants' conduct was knowing and/or willful;

   c. Whether Defendants are liable for damages, and the amount of such damages; and

   d. Whether Defendants should be enjoined from engaging in such conduct in the future.

50. **Typicality.** Plaintiff asserts claims that are typical of each member of the Class because they are all persons who received text messages on their cellular telephones using an ATDS without their prior express written consent. Plaintiff will fairly and adequately represent and protect the interests of the proposed class, and has no interests which are antagonistic to any member of the proposed class.

51. **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the proposed class, and has no interests which are antagonistic to any member of the proposed Class.

52. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes.

53. **Superiority.** A class action is the superior method for the fair and efficient adjudication of this controversy.

54. Class-wide relief is essential to compel Defendants to comply with the TCPA.

55. The interest of the members of the proposed Class in individually controlling the prosecution of separate claims against Defendants is small because the statutory damages in an individual action for violation of the TCPA are relatively small.

56. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the text messages at issue are all automated and the members of the Class, by definition, did not provide the prior express written consent required under the statute to authorize text messages to their cellular telephones.

57. Defendants have acted on grounds generally applicable to the proposed Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the proposed Class as a whole appropriate.

58. Moreover, upon information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST CAUSE OF ACTION**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227,** *et seq.*

59. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

60. The foregoing acts and omissions of Defendants constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

61. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and members of the proposed Class are entitled to treble damages of up to $1,500.00 for each and every text message sent in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

62. Plaintiff and members of the proposed Class are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

63. Plaintiff and members of the proposed Classes are also entitled to an award of attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227,** *et seq.*

64. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

65. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

66. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and members of the proposed Classes are entitled to an award of $500.00 in statutory damages for

each and every text message made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

67. Plaintiff and members of the proposed Classes are also entitled to, and do, seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

68. Plaintiff and members of the proposed Class are also entitled to an award of attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members of the proposed Class the following relief against Defendants:

a. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;

b. As a result of Defendants' willful and/or knowing violations of the TCPA, Plaintiff seeks for himself and each member of the proposed Class treble damages, as provided by statute, of up to $1,500.00 for each and every text message that violated the TCPA;

c. As a result of Defendants' violations of the TCPA, Plaintiff seeks for himself and each member of the proposed Class $500.00 in statutory damages for each and every text message that violated the TCPA;

d. An award of attorneys' fees and costs to counsel for Plaintiff and the proposed Class;

e. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate the Class, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firm representing Plaintiff as counsel for the Class;

  f.  Such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: November 4, 2019      Respectfully submitted,

                **CARLSON LYNCH LLP**

                By: */s/ Katrina Carroll*
                   Katrina Carroll

                Katrina Carroll
                Kyle Shamberg
                111 W. Washington Street
                Suite 1240
                Chicago, IL 60602
                Telephone: (312) 750-1265
                Email: kcarroll@carlsonlynch.com
                    kshamberg@carlsonlynch.com

                **BURSOR & FISHER, P.A.**
                Joshua D. Arisohn
                888 Seventh Ave.
                New York, NY 10025
                Telephone: (646) 837-7142
                Facsimile: (212) 989-9163
                Email: jarisohn@bursor.com

                *Attorneys for Plaintiff*